752

NINA HENRICK, Plaintiff-Appellee, v. GINCO OIL & GAS OF TEXAS, INC., Defendant-Appellant.

Fourth District   No. 4—86—0779

Opinion filed July 16, 1987.

Edward B. Tucker, of Mt. Sterling, for appellant.

Robert E. Utter, of Mt. Sterling, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On October 3, 1985, plaintiff, Nina Henrick, filed suit in the circuit court of Brown County against defendant, Ginco Oil and Gas of Texas, Inc., seeking a declaratory judgment that she was entitled to the sum of $18,200, which was placed in escrow with the Farmers State Bank of Mt. Sterling (bank). Also then placed in escrow was an oil and gas lease of certain premises wherein plaintiff was the lessor and defendant the lessee. The case was eventually tried on the merits at bench upon the complaint, defendant's amended answer and counterclaim seeking $18,200, and plaintiff's reply and answer to the counterclaim. On October 27, 1986, the court found in favor of plaintiff, directing that the sum of $18,200, which had been delivered by

the escrow agent to the clerk of the court, be delivered to plaintiff. Defendant has appealed.

■ Defendant has maintained that the court erred in striking portions of its original answer and its original counterclaim; however, that issue was waived when it filed an amended answer and counterclaim. (*Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 449 N.E.2d 125.) Thus, the only remaining issue is whether the evidence supports the judgment. That decision is made difficult because of the small amount of evidence rather than because of conflict in the evidence.

The evidence showed that at all times pertinent, plaintiff was in her late eighties and the owner of 182 acres of land in Brown County. In the summer of 1983, agents of defendant presented her with a document conveying a one-year oil and gas lease of those premises to defendant for $100 per acre. The document gave defendant rights of extension of the length of the lease if oil was produced or if certain other conditions were met and reserved a certain royalty interest for plaintiff. The document bore the date of August 3, 1983, and plaintiff signed the document. As we have stated, the lease and a cashier's check for the one-year rent of $18,200 were placed in escrow with the bank. With the lease was a note initialed by an agent of defendant and plaintiff's son. It stated that the proceeds deposited were to be "forwarded to Nina Henrick when title examination is completed by Ed Tucker, attorney."

No evidence was presented as to what was to be done with the lease at the time of the delivery of the money, but presumably, it was to be delivered to defendant. The evidence showed that Ed Tucker was an attorney retained by defendant.

Notably, although the notation spoke of the money being delivered upon completion of the examination of the title to the property, no express provision was made that the title need be found merchantable. However, the circumstances were such that a requirement of merchantability would likely have been implied. Much time has been saved on appeal by plaintiff's candid admission that the existence of merchantable title was a condition of release of the funds. The trial court, nevertheless, concluded that under the circumstances, defendant was required to give plaintiff more specific information as to the defects of title upon which it was relying and to make some statement as to what would be required to correct the defects. The court ruled that defendant was thus barred from rescinding the contract for failure to furnish merchantable title. The court's ruling was supported by the evidence.

■ No evidence was presented indicating that plaintiff agreed to furnish defendant with an abstract of title, and apparently defendant did not expect this to be done because its attorney, working with an abstractor, had some title search made and compiled some title notes. Tucker then wrote a letter which plaintiff received on September 26, 1983. It states that Tucker found the title to be unmerchantable "because of outstanding oil and gas leases and assignments of record." The letter then demanded that title be cleared within 10 days or demand would be made for return of escrow proceeds. The letter was apparently taken to John B. Leonard, an attorney employed by plaintiff, who wrote Tucker indicating that he was ready to seek to cure any title defects. Leonard requested that Tucker tell him specifically what curative measures he wanted in order to make title merchantable. Leonard testified that he later talked with Tucker by telephone on October 31, 1983, again asking for specific objections. According to Leonard's testimony, Tucker told him that no substantial problems existed and that he would write and give to Leonard a "drilling opinion."

According to Leonard's testimony, on November 15, 1983, Tucker mailed to him "notes and searches of record," together with documents consisting of some 43 pages in all. The only substantial title impediment in the notes referred to an oil and gas lease executed in 1959 and stated in the note to be of a two-year duration. The documents included oil and gas leases and releases, minor right-of-way conveyances and deeds. Some leases had provisions concerning pooling and dry holes which made it impossible to be certain from the documents that they had expired. The evidence also indicated that on January 9, 1984, Leonard wrote Tucker asking for specific objections. No evidence was presented as to further communication between the parties until September 3, 1985, when plaintiff's new counsel wrote to defendant requesting a release of the escrowed funds.

George McClure, a Beardstown lawyer with 12 years' experience, much of which had involved real estate transactions, including those concerning oil and gas leases, testified for plaintiff as to the practice in real estate transactions in the area. He stated that the practice was for those examining on behalf of a purchase or lessee to make specific objections to the title and to suggest the curative measures which needed to be taken. He agreed that if he represented a seller or lessor and received a specific objection to a document, he would examine the document carefully himself in order to determine the nature of a problem. He conceded that reference to the document giving rise to the objection would be helpful to the attorney for the

vendor or lessor.

Here, the court could have believed Leonard's testimony that Tucker told him that no substantial problems existed and that he, Tucker, would provide a "drilling opinion." This was not done. The title notes sent by Tucker to Leonard were not specific as to which matters shown were objections and no designation was made as to which of the various documents presented constituted matters requiring correction. The specificity with which a vendee or lessee must designate objection to the title to real estate in order to require correction has not been ruled on in this State. (See 92 C.J.S. *Vendor Purchaser* sec. 214(b) (1955).) However, the sole testimony was that the practice in the area was that they be specific and that they designate suggested methods of correction. The purported objections here lacked specificity. This was particularly so in view of the evidence most favorable to the plaintiff which indicated that, despite the large volume of documents submitted by Tucker to Leonard, Tucker said that he did not consider any objections to be very substantial and would prepare a "drilling opinion."

Many of the terms of the contract between plaintiff and defendant by which the lease was executed and put in escrow with the money arise by implication. Under the evidence here, the court's determination that defendant did not conform to the implied conditions in the contract in regard to setting forth any objections to plaintiff's title was not contrary to the manifest weight of the evidence.

The judgment of the circuit court in favor of the plaintiff is affirmed.

Affirmed.

SPITZ, P.J., and LUND, J., concur.